**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | Case No: |
| ACRON 2 PORSCHE DRIVE MEZZCO LLC, | 25-61529-LRC |
| Debtor. | Chapter 7 |

## RESPONSE TO STATUS REPORT AND REQUEST FOR HEARING

COMES NOW CAI Overland Lender, LLC ("**Lender**"), by and through its undersigned counsel, and hereby files its response to the *Status Report* [Docket No. 26] (the "**Status Report**"), filed by S. Gregory Hayes in his capacity as the chapter 7 trustee in this case (the "**Trustee**") and respectfully states as follows:

1. On October 6, 2025 (the "**Petition Date**"), ACRON 2 Porsche Drive Mezzco LLC ("**Debtor**"), filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**"). S. Gregory Hays has been appointed chapter 7 trustee (the "**Trustee**") of the Estate.

2. The initial meeting of creditors required under section 341 of the Bankruptcy Code was scheduled for November 5, 2025 and reset on account of Debtor's failure to appear to December 2, 2025, when it was held and concluded. *See* Docket No. 6.

3. On November 13, 2025, Lender filed its *Motion for Relief from the Automatic Stay* (the "**Stay Relief Motion**"). *See* Docket No. 7. A hearing on the Stay Relief Motion was held on December 4, 2025 (the "**Hearing**"). At the Hearing, the Court directed the Trustee to file a status report indicating the status of the Trustee's investigation, whether an evidentiary hearing is needed, and if one is needed, the approximate time each party will need to present evidence. *See* Docket No. 24, at 42-43.

108205853.1

4.  The Trustee's Status Report completely disregards the Court's instructions as it fails to address the updates requested by the Court[1] and merely reiterates the same status reported by the Trustee at the Hearing. No progress made to date is even mentioned. Instead, the Trustee merely reiterates what he said at the Hearing: that his investigation is ongoing with respect to (i) the finances of the Debtor and its subsidiary, ACRON 2 Porsche Drive, Atlanta LLC ("**ACRON Atlanta**"); (ii) the propriety of voting the membership interest of the Debtor's estate in ACRON Atlanta to "move forward with the proposed sale of the assets of ACRON Atlanta"; and (iii) evaluating potential avoidance claims the Trustee may have against the Lender and any other parties. *See* Status Report, at ¶ 7. These issues are exactly the same and have been under consideration by the Trustee since at least October 15, 2025, nearly 3 months ago, when he indicated in an email to counsel for the Lender that he was reviewing documents, communicating with the Debtor, and considering the issues regarding the case. The Status Report does not at all address the need for an evidentiary hearing on the Stay Relief Motion. Moreover, it omits any disclosure regarding the Trustee's discussions with ACRON Atlanta and a potential buyer concerning a sale of ACRON Atlanta's property. Such omissions are despite the fact that a purchase and sale agreement had been exchanged between ACRON Atlanta and the potential buyer more than a week before the Trustee filed the Status Report.

5.  In view of the above, Lender believes it is imperative that the Court be updated and provided a fulsome response in accordance with the Court's prior instructions:

---

[1] In setting the Status Report deadline, the Court instructed: "So if you all want to file – I want to do this the easiest, cheapest way possible for everyone—a very informal status report, **just telling me where you are, where you are going, what you think you're going to need**." (Emphasis added). *See* Docket No. 24, at pages 41 ll. 23-25 and 42, ll. 1-2.

108205853.1

## WHERE WE ARE

6.  Since the Hearing, the Parties[2] have been in contact but have not been able to resolve the Stay Relief Motion. Specifically, counsel for ACRON 2 Porsche Drive Holding LLC ("**ACRON Holding**") represented to the Court at the Hearing that he was in possession of a letter of intent (the "**LOI**") that was signed by a potential buyer known to ACRON Holding, and requested that the Court afford time for the Trustee and Lender to speak with the potential buyer to evaluate its financial wherewithal and ability to close a sale. *See* Docket No. 24 at 20-23. On December 15, 2025, following a review of the LOI, at the Trustee's request, Lender forwarded a letter (the "**Letter**") containing its initial questions and observations to the Trustee and counsel for ACRON Holding and requested the availability of the potential buyer for an interview prior to January 5, 2026, the Status Report filing deadline

7.  Questions contained in the Letter included:

    a.  Request for confirmation of the proposed sale timeline given that such timeline indicated an outside closing date of April 23, 2026, while the LOI also indicated that "in no event shall Closing extend beyond February 28, 2026," which exhibits inconsistencies in the LOI;

    b.  Request for confirmation of the proposed deposit amount, which was stated as 5% of the purchase price and $220,000.00 (as opposed to $2.2 million, which is actually 5% of the proposed purchase price);

    c.  Whether exclusivity was intended to last through the execution of a purchase and sale agreement or another defined milestone, as the LOI was silent on these points;

    d.  Request for clarification of the potential buyer's understanding of the asset being sold, as it is listed in the LOI as the "fee-simple interest in the Property"; however, ACRON Atlanta only owns a leased fee interest in the subject Property;

    e.  Whether ACRON Atlanta had sought the required approval from the KHRE SMA Funding, LLC (the "**Senior Lender**") for the sale;

---

[2] The "**Parties**" are the Trustee, ACRON Holding, and Lender.

  f. Whether ACRON Atlanta had sought the required approval from the City of Hapeville for the sale;

  g. Whether ACRON Atlanta had reviewed the conditions in section 16.5.1 of the License Agreement between IHG Franchising, LLC ("**IHG**") and ACRON Atlanta to assess any potential issues with the transfer of the agreement to the potential buyer or had any preliminary discussions with IHG regarding the potential buyer;

  h. Whether the LOI had been shared or discussed with the Senior Lender, particularly in light of the impending maturity date of the Senior Loan (defined below) on January 18, 2026;

  i. Whether financing was a contemplated closing condition and if so, what financing the potential buyer anticipated using and whether it had been pre-approved for the same;

  j. What expected purchase price adjustments or post-closing adjustments ACRON Atlanta anticipated;

  k. Whether the potential buyer had previously submitted an LOI for the Property (as defined in the LOI); and

  l. Whether the potential buyer owned any branded or franchised hotel properties;

  m. Whether the potential buyer was involved in prior and/or continuing litigation concerning its multifamily investment properties based on information Lender uncovered through its own diligence and research.

8. To date, no substantive responses to the Lender's initial questions related to the LOI have been received and neither the Trustee nor counsel for ACRON Holding have provided the potential buyer's availability for an interview.

9. Counsel for ACRON Holding indicated that the potential buyer had an asset purchase agreement in hand on December 24, 2025, but did not provide a copy of the same to the Lender. At the end of December, Counsel for ACRON Holding (without acknowledging or making any comment as to whether the LOI had been signed)[3] indicated that he anticipated receiving a

---

[3] Lender remains uncertain whether the LOI previously provided or any new LOI has been signed by ACRON Atlanta, a potential buyer, the Debtor and/or the Trustee.

108205853.1

markup of an asset purchase agreement from the potential buyer by December 30, 2025, which would be provided to the Lender upon receipt.

10. Having not received any purchase and sale agreement or update by January 5, 2026, Lender's counsel again inquired as to its status and requested a copy. On January 6, 2026, counsel to ACRON Holding provided Lender with a draft of a purchase and sale agreement (the "**PSA**") being negotiated by the potential buyer, ACRON Atlanta, ACRON Holding, and the Trustee.

11. To date, all of the updates to Lender regarding the LOI and PSA have come from counsel to ACRON Holding. The Trustee has not provided any update as to whether and to what extent he has spoken with the potential buyer or otherwise conducted any due diligence with respect to the LOI, PSA, or related sale. Similarly, the Status Report is devoid of such updates or mere mention of the PSA.

12. To date, the Trustee has not evidenced any progress or attempts to make progress on his evaluation of items noted above in para. in 4.(i)-(iii).  The Status Report is devoid of any updates regarding if or how the trustee's evaluation of these matters without regard to the Court's grant of additional time to explore, at the material expense of the Lender who, over the past month, has incurred an additional $227,366 in Protective Advances for interest due on the senior loan and legal expenses and an additional $577,356 in accrued interest, default interest, late fees, and servicing fees due on the mezzanine loan.

## WHERE WE ARE GOING

13. As outlined in the Stay Relief Motion, as Lender has repeatedly advised the Trustee and counsel for ACRON Holding, and as set forth in Lender's questions after reviewing the LOI, a fatal flaw to consummating any sale of the property owned by ACRON Atlanta is that no sale may occur without Lender's consent. Lender has repeatedly advised ACRON Holding and the

108205853.1

Trustee that it currently does not consent as it has been unable to evaluate viability of the proposed sale, particularly with respect to the potential buyer's wherewithal to consummate the same. Neither the Trustee nor counsel for ACRON Holding has provided any response to this consent requirement. The same is also applicable to the Senior Lender's and the City of Hapeville's consent, both of which are required to complete a sale of the property owned by ACRON Atlanta.

14. Further, on December 31,2025, a monthly interest payment was due to the Senior Lender by ACRON Atlanta. While Lender has made Protective Advances to cover monthly interest payments since November 2024 in order to cure ACRON Atlanta's default in failing to make such payment obligations, it did not believe it would need to in January 2026 because the property collateralizing the senior loan has generated sufficient cash flow to pay such payment; however, Lender did not receive a response to its inquiry requesting confirmation that ACRON Atlanta would make the payment timely. To avoid late fees that would have been assessed after the 5-day grace period and to protect its lien position, on the afternoon of January 5, 2026 Lender processed the payment. This is not the first time that ACRON Atlanta has failed to make its senior loan interest payments despite having sufficient cash flow from operations to pay for such, which raises serious concern as to where this available cash flow is going if not to its rightful creditors.

15. As a result, while some information has been exchanged related to the LOI and potential sale, no meaningful progress has been made towards resolution of the Stay Relief Motion. Moreover, no post-petition payments have been made to the Lender, resulting in increased prejudice to its rights in this case.

**WHAT WE NEED**

16.     The Loan Agreement dated December 21, 2018 (as amended, the "**Senior Loan Agreement**") by and between ACRON Atlanta and the Senior Lender matures on January 18, 2026. As of that date, there is no impediment and no stay against the Senior Lender commencing foreclosure proceedings against ACRON Atlanta and its property. Should foreclosure proceed, Lender will lose its rights to recover anything on its claims – its secured liens would be completely wiped out and the value of its collateral would be $0 as the collateral would be nonexistent. Such consideration must not be overlooked: the Trustee's responsibility is to recover as much as possible for creditors by liquidating nonexempt assets, acting as an officer of the court to ensure fairness and honesty to all creditors. Allowing a maturity default to occur in the very near future and an ensuing foreclosure proceeding by the Senior Lender is contrary to the Trustee's mandate.

17.     There has been no indication from the Trustee or counsel for ACRON Holding that either have approached the Senior Lender to discuss the impending maturity date, likelihood of a maturity default, and resolution of the same.

18.     At a minimum, immediately Lender needs full disclosure regarding the Trustee's negotiations with ACRON Atlanta and any potential buyer, meaningful answers to the questions previously posed by Lender to the Trustee and be provided with a viable framework as to how the Trustee could consummate a sale of a non-estate asset subject to a matured senior loan within a reasonable period of time.

**REQUEST FOR EVIDENTIARY HEARING ON STAY RELIEF MOTION**

19.     As discussed above, the Stay Relief Motion was filed just shy of two months ago. On November 13, 2025. Initial communications between the Trustee and Lender's counsel began

108205853.1

in October 2025. The Status Report demonstrates that the Trustee has made no measurable progress towards resolving this matter or a feasible pursuit of the sale of an admitted non-estate asset.

20. Accordingly, at this time Lender believes it is imperative that the Court set an evidentiary hearing to resolve the Stay Relief Motion and hereby requests that an evidentiary hearing be set. With respect to such evidentiary hearing, Lender believes it requires half a day to present evidence.

WHEREFORE, Movant respectfully requests that the Court set an evidentiary hearing on the Stay Relief Motion at its earliest convenience, and for such further relief as the Court deems appropriate.

Dated: January 8, 2026                     **POLSINELLI PC**

*/s/ Ashley D. Champion*

Ashley D. Champion
Georgia Bar No. 423962
1201 W. Peachtree St. NW
Suite #1100
Atlanta, GA 30309
achampion@polsinelli.com

*Counsel for CAI Overland Lender, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2026, I electronically filed the foregoing *Response to Status Report and Request for Hearing* (the "**Response**") using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

| | | |
|---|---|---|
| J. Robert Williamson<br>rwilliamson@swlawfirm.com<br>**Counsel for the Debtor** | Eric Barton<br>Jason Jon Dejonker<br>Ebarton@seyfarth.com<br>jdejonker@seyfarth.com<br>**Counsel for ACRON 2 Porsche Drive Holding LLC** | R. Braden Copeland<br>Braden.copeland@alston.com<br>**Counsel to IHG Franchising, LLC** |
| S. Gregory Hayes<br>ghays@haysconsulting.net<br>**Chapter 7 Trustee** | Michael J. Bargar<br>mbargar@rlkglaw.com<br>**Proposed Counsel to the Chapter 7 Trustee** | |

*/s/ Ashley D. Champion*
Ashley D. Champion
Georgia Bar No. 423962

*Counsel for CAI Overland Lender, LLC*

108205853.1